McGOWIN-FOSHEE LUMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34466. Promulgated July 15, 1930.

*H. C. Kilpatrick*, *Esq.*, for the petitioner.
*Elden McFarland*, *Esq.*, for the respondent.

OPINION.

MARQUETTE: There is no dispute as to the amount of taxes due and owing from the Alabama corporation. The parties hereto have stipulated that the tax liability of that corporation for the year 1917 has been duly satisfied; that on May 12, 1928, this Board in *McGowin-Foshee Lumber Co.* (the Alabama corporation) v. *Commissioner*, 10 B. T. A. 961, entered a final order of redetermination finding deficiencies in income and profits taxes in the amounts of $13,514.95 for 1918 and $20,925.71 for 1919, and that the decision and final order of redetermination are correct. On December 15, 1928, pursuant to that decision and order, the deficiencies were assessed by the respondent, together with interest in the amount of $2,272.18 for 1918 and $3,518.10 for 1919, and credits have been applied against the assessments in the amount of $2,849.65 for 1918. No payment of principal or interest has been made for 1919. It follows that there is no liability on the part of the petitioner for any taxes of the taxpayer for 1917, and that the maximum liability for 1918 and 1919, if there is any liability, is the unpaid part of the deficiencies as determined by the Board for those years in Docket No. 10446, together with such interest as is allowed by statute.

The petitioner, while conceding the liability, and the amount thereof, of the taxpayer for taxes and interest for 1918 and 1919, contends that there is no liability on its part for such taxes and interest for the reason that: (1) Section 280 of the Revenue Act of 1926 is unconstitutional; (2) that the respondent has failed to show that he has exhausted his remedies against the taxpayer corporation and the trustees in dissolution, and (3) that he has failed to establish a conveyance of assets of the taxpayer to the petitioner.

The first contention of the petitioner will be dismissed under authority of *Henry Cappellini*, 14 B. T. A. 1269, wherein we held that a transferee may not seek a redetermination by the Board under section 280 of the Revenue Act of 1926, and at the same time question the validity of that section. That is what the petitioner has done in this case.

The second contention of the petitioner is that upon the dissolution of the taxpayer, title to its assets immediately vested in its board of directors, as trustees in dissolution, under section 7063 and 7069 of the Alabama Code of 1923, and that the respondent must proceed and exhaust his remedies against the taxpayer and its directors before he can maintain proceedings against the petitioner. In

support of this position the petitioner cites *Wire Wheel Corporation of America*, 16 B. T. A. 737, and *Phil Gleichman*, 17 B. T. A. 147.

Sections 7063 and 7069 of the Alabama Code of 1923 provide that:

7063. (3510) *How to dissolve a corporation.*—Whenever the holders of all the capital stock of any corporation shall desire to dissolve the corporation, they may do so by an agreement to that end signed by all the stockholders, whose signatures shall be attested by two witnesses, and the agreement shall be certified by the president or other managing officer of the corporation that the names signed to such agreement constitute all the stockholders of the corporation, which agreement and certificate shall be filed and recorded in the office of the probate judge of the county where the corporation was organized, the corporation shall be dissolved and the board of directors shall proceed to settle up and adjust its business and affairs.

\*　　\*　　\*　　\*　　\*　　\*　　\*

7069. (3516) *Exist for five years after dissolution by limitation or forfeiture for certain purposes.*—Corporations whose charters expire by limitation and which are dissolved by forfeiture or by any other cause, except by judicial decree, exist as bodies corporate for the term of five years after such dissolution, for the purpose of prosecuting or defending suits, settling their business, disposing of their property, and dividing their capital stock, but not for the purpose of continuing their business; and the directors shall be trustees thereof with full power to settle their affairs, collect their debts, sell and convey the property and divide the moneys and other property among the stockholders, after paying its debts; and may act under the by-laws of the corporation, prescribe the terms and conditions of the sales of the property of the corporation, sue for and recover the debts and property of the dissolved corporation, in the corporate name; and are jointly and severally liable to its creditors and stockholders to the extent of the property which may come into their hands. On application to the circuit court or other court at the principal place of business of the corporation, such trustees may be continued for such length of time beyond such five years as may be necessary for the purpose in this section set forth.

It may be stated that by virtue of the sections of the Alabama Code just quoted, the assets of the taxpayer corporation, upon the filing with the probate court of the resolution of dissolution, passed to the directors of the taxpayer as trustees in dissolution, and that it was their duty to settle up the affairs of the taxpayer, sell and convey its property, and, after paying its debts, to divide the remaining property among the stockholders. But it does not follow that under the circumstances herein it was necessary for the respondent to proceed against either the taxpayer or its directors before taking steps to collect the taxes in question from the petitioner. The taxpayer was dissolved in November, 1926, and in December of that year all of its property was transferred, in possession at least, to the petitioner, which has since that time held possession and control thereof. When the transferee letter was mailed to the petitioner, neither the taxpayer nor the directors thereof had possession of any property belonging to the taxpayer and that fact was known to the respondent.

To proceed against the taxpayer would obviously have been useless and futile, and, under the circumstances, was not necessary. *B. F. Fairless et al.*, 19 B. T. A. 304. Nor is there anything in the record to show that an action would lie against the directors. They did not have, after December 3, 1926, any property of the taxpayer in their possession from which payment of the taxpayer's liability could have been made. And there is nothing to indicate that they so acted, either wilfully or negligently, as to render themselves personally liable for the taxes in question. The cases cited by the petitioner arose under circumstances distinctly different from those at bar and are not in point here. It is our opinion that the respondent was not required to proceed against either the taxpayer or its board of directors before asserting the liability in question against the petitioner, and that this proceeding should be decided on its merits.

This brings us to the question as to whether the petitioner is a transferee of the taxpayer. The petitioner admits that on December 3, 1926, it received in possession, and has held since that time, property theretofore owned and held by the taxpayer, and that the property had a fair market value greater than the liability of the taxpayer for taxes for 1918 and 1919. But the petitioner contends that its title to the property so transferred is not valid because the conveyance was made by J. I. Robbins, as president of the taxpayer, and not by the board of directors acting as trustees in dissolution. It is true that the conveyance was not made by the board of directors as trustees in dissolution, and it may be that in a proper case it could be successfully attacked. But we do not think that in equity either the petitioner or its officers should be heard to question the validity of the petitioner's title in order to avoid subjecting the property to the rights of the taxpayer's creditors. The petitioner still holds the property, or its proceeds, and, while it questions the conveyance by which it received the property, it does not offer to reconvey the property to the taxpayer. Furthermore, it may be pointed out that while the directors of the taxpayer, who are also directors of the petitioner, did not so far as the record shows, specifically, as trustees in dissolution, authorize or make a conveyance of the taxpayer's property, they did, as stockholders, attend and participate in the stockholders' meeting of December 3, 1926, as well as in the meeting of the incorporators of the petitioner on the same day, and that at such meetings they authorized for the taxpayer and accepted for the petitioner, the conveyance of the taxpayer's assets. We find no irregularity in the conveyance that may be questioned by the petitioner or by its officers or stockholders.

The situation as we therefore find it, is that the taxpayer in 1926 conveyed to the petitioner property having a value greater than the

amount of taxes owing by the taxpayer for 1918 and 1919, and that in consideration thereof the petitioner paid directly to the stockholders of the taxpayer, all of its, the petitioner's, capital stock. The petitioner is, therefore, liable for the unpaid taxes of the taxpayer for 1918 and 1919. *United States* v. *Capps Mfg. Co.*, 15 Fed. (2d) 528; *Grennell* v. *Detroit Gas Co.*, 112 Mich. 70; 70 N. W. 413; *McWilliams* v. *Excelsior Coal Co.*, 298 Fed. 884; *Swing* v. *American Glucose Co.*, 123 Ill. App. 156; *Woodley Petroleum Co. et al.*, 16 B. T. A. 253.

*Judgment will be entered for the respondent.*