TERRACE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 80584.   Promulgated February 1, 1938.

*Lucien H. Boggs, Esq.*, for the petitioner.
*P. A. Bayer, Esq.*, and *J. M. Morawski, Esq.*, for the respondent.

**OPINION.**

BLACK: Petitioner in its brief states the points upon which it relies, as follows:

1. The Commissioner has not met the burden of proof which devolves upon him to establish prima facie liability upon petitioner as a transferee.

2. The property conveyed by the original taxpayer to the petitioner was a homestead. Under the constitution of Florida a homestead is not a mere right of personal exemption, but a peculiar qualified estate in land of such character as not to be distrainable for Federal taxes even had title continued to stand in the original taxpayer, in other words the Government lost nothing by the transfer.

If petitioner is correct in point 1, then we need go no further. One of the essential things which the Commissioner must prove to fix transferee liability in equity upon a transferee of assets is that the transfer was either made while the transferor was insolvent or else resulted in insolvency of the transferor, or, in the case of a corporation, was one of a series of distributions in liquidation which resulted in its insolvency. See *Kinnett-Odom Co.*, 19 B. T. A. 1124; *Samuel Keller*, 21 B. T. A. 84; affd., 59 Fed. (2d) 499; *Eliza J. Wray*, 24 B. T. A. 94. There is no contention made by the Commissioner in this proceeding that petitioner was liable at law as a transferee of the assets of Aycock, such as that petitioner by contract assumed and agreed to pay the liabilities of Aycock, including the taxes in question. The allegations of the Commissioner affirmatively pleaded in his answer would only establish a liability in equity.

An examination of our findings of fact will show that the Commissioner has met his burden of proof of showing all elements of transferee liability except one, and that is that the transfer of the assets in question by Thomas J. Aycock and his wife to petitioner on July 12, 1933, was made while he was insolvent or else rendered him insolvent. The record is silent on that point. There can be no question but that if Aycock was insolvent at the time the transfer in question was made to petitioner, Terrace Corporation, or if such transfer rendered him insolvent, such transfer was a fraud upon his creditors and the Government would have a right to proceed against petitioner as a transferee. An *insolvent* debtor can not make an effective transfer as against his creditors of his property to a corporation which he forms, in exchange for its capital stock (and for the purposes of this discussion we will treat all of the stock of petitioner as having been issued to Aycock or his nominees). *First National Bank of Chicago* v. *Trobein Co.*, 59 Ohio St. 316; *Allen* v. *French*, 178 Mass. 539. It seems equally well settled that a *solvent* individual who is not rendered *insolvent* thereby, may freely convey his property to whomever he pleases, no actual fraud being shown. *Coaldale Coal Co.* v. *State Bank*, 142 Pa. 288; 21 Atl. 871. Cf. *McDonald* v. *Williams*, 174 U. S. 397; *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371.

Was Aycock insolvent at the time he made the transfer in question or was he rendered insolvent thereby? It is that question which we are unable to answer from the facts which have been proved. It is respondent's contention in his brief that all the evidence, when taken together, makes out a prima facie case of transferee liability and that if, at the time of the transfer of assets in July 1933, Thomas J. Aycock was still solvent and had other assets left which were subject to the payment of his debts, the burden was upon petitioner to show that fact.

An examination of respondent's answer filed in this proceeding shows that he affirmatively alleged all the facts which were necessary to make out a prima facie case of petitioner's transferee liability, but these allegations were denied by petitioner in its reply, which was duly filed. It was therefore the burden of the Commissioner to prove these facts at the hearing. He proved them all satisfactorily by a stipulation of facts which was filed except as to the insolvency of Aycock at the time of the transfer or that the transfer itself resulted in his insolvency.

As to this vital matter petitioner points out that the conveyance in question was made July 12, 1933, and that there is nothing in the stipulated facts to show that Aycock was insolvent at the time of the transfer or that the transfer itself resulted in his insolvency; that, while it is true that the stipulation of facts shows that "The deficiencies determined by the Board for the years 1925, 1928 and 1929 were assessed against Thomas J. Aycock, Jacksonville, Florida, on respondent's March, 1934, list in the respective amounts of $9,859.82, $123.92 and $301.53, plus interest as provided by law, and that such amounts remain outstanding and are unpaid; that the respondent has diligently proceeded in an attempt to collect said amounts from Thomas J. Aycock without avail and has issued a warrant of distraint to enforce collection of said amounts from said Thomas J. Aycock and after diligent search has been unable to locate any property of said Thomas J. Aycock out of which collection of said taxes could be effected," nevertheless, these facts are insufficient to show that Aycock was insolvent at the time of the transfer, July 12, 1933, or that the transfer itself rendered him insolvent. Petitioner concedes that the stipulated facts show that Aycock was insolvent from and after the assessment of deficiencies against him in March 1934, but contends that these facts fall short of showing that Aycock was insolvent on July 12, 1933.

In this contention we think petitioner must be sustained. It may well be that respondent could have proved that the transfer which Aycock and his wife made to petitioner on July 12, 1933, was made while he was insolvent or that the transfer itself rendered him insolvent, but he did not prove it and we know of no authority for us to supply by inference what respondent has failed to prove. The statute places the burden of proof to show transferee liability upon respondent and that means that he must prove all elements which are necessary to make out a prima facie case. He has not made out in the instant case such a prima facie case and there is no obligation upon the transferee to go forward with his defense until respondent has done so.

It is undoubtedly true that if respondent had proved that Aycock was insolvent at the time he and his wife made their conveyance of

the homestead property to petitioner, or immediately thereafter, the petitioner would not be heard to claim that it was an innocent purchaser for value. The rights of an innocent purchaser for value would not be a valid defense available to petitioner, a transferee corporation, under such circumstances. *Clark* v. *Walter T. Bradley Coal Co.*, 6 App. D. C. 437; *Roberts* v. *Hughes*, 86 Vt. 76; 83 Atl. 807.

But, as we have already pointed out, a transferee does not have to enter upon his defenses until the complaining creditor has made out a prima facie case, and the trouble in the instant case is that respondent has not proved that Aycock was *insolvent* when he made the transfer nor has he proved that such conveyance resulted in Aycock's insolvency. What respondent has proved is that Aycock was insolvent seven or eight months afterwards, at the time the deficiencies were assessed against him in March 1934, and has continued so thereafter. It is true that the stipulation shows that the Commissioner has issued a warrant of distraint against Aycock and has found no property.

This is equivalent to a return of an execution *nulla bona* against the debtor and is sufficient to prove that the creditor has exhausted his remedies against the debtor transferor (one of the necessary elements to prove in establishing transferee liability in equity), but the weight of authority seems to hold that the return of an execution *nulla bona* against the debtor, several months after the alleged fraudulent transfer, is not sufficient to prove that the debtor was insolvent at the time of the transfer or was rendered insolvent thereby. Cf. *American Feature Film Co.*, 24 B. T. A. 18.

In this latter case the facts showed that the taxes against the taxpayer transferor had not been paid and that distraint warrants had been issued against him and returned *nulla bona*. Nevertheless we said, "These facts do not prove insolvency immediately after the alleged distribution [citing cases]."

Respondent seems to assume in his argument that if he has proved Aycock insolvent after March 1934, when the judgment for the deficiencies in income taxes was rendered against him by the Board of Tax Appeals, this proof relates back and is sufficient to make out a prima facie case that Aycock was insolvent immediately after the conveyance in question—July 12, 1933—and that if he had sufficient property left with which to pay his debts, that would be a fact which petitioner would have to prove. We do not understand the weight of authority to support such a rule, though there is some minority authority to that effect. The Supreme Court of Indiana, in *Nevers* v. *Hack*, 138 Ind. 260; 37 N. E. 791, stated what we believe to be the rule followed by the majority of the courts on this question. The court in its opinion stated, in part, as follows:

* * * It is the settled law in this state that it must be both alleged and proven, before an alleged fraudulent conveyance can be avoided, that at the time of the conveyance, and at the time the suit is brought, the debtor did not have enough property left, subject to execution, to pay his debts. *Pence* v. *Croan*, 51 Ind. 336; *Sherman* v. *Hogland*, 54 Ind. 578; *Evans* v. *Hamilton*, 56 Ind. 34; *Bentley* v. *Dunkle*, 57 Ind. 374; *Romine* v. *Romine*, 59 Ind. 346; *Deutsch* v. *Korsmier*, Id. 373; *Price* v. *Sanders*, 60 Ind. 310; *Whitesel* v. *Hiney*, 62 Ind. 168; *Spauling* v. *Myers*, 64 Ind. 264; *Noble* v. *Hines*, 72 Ind. 12; *Bruker* v. *Kelsey*, Id. 51; and many other cases too numerous to cite. Counsel for appellant concedes this to be the law in this state, but contends that, if the insolvency of the debtor be established or proven to exist at the time the suit is brought to avoid the conveyance, that carries with it the presumption that such insolvency existed prior to that time, and extends back to the time when the conveyance was made, and cites, in support of that proposition, *Lee* v. *Lee*, 77 Ind. 251. That case—and perhaps some others, among which are *Bruker* v. *Kelsey*, *supra*, and cases there cited—holds that a return of an execution nulla bona shortly before the suit is brought may be sufficient, prima facie, to prove that the grantor did not have property, at the time the suit is brought, subject to execution, sufficient to pay his debts. But none of them holds that such return is sufficient to prove that he did not have sufficient property at the time the conveyance was made. In support of the contention that such return is sufficient, we are referred to *Strong* v. *Lawrence*, 58 Iowa, 55, 12 N. W. 74, and *Carlisle* v. *Rich*, 8 N. H. 44, both of which hold that "where it is found that a debtor is insolvent at the time the judgment is rendered, and is unable to respond to the amount recovered, his insolvency will be considered as extending back beyond a voluntary conveyance of his property made during his indebtedness, unless the contrary be shown." This doctrine virtually puts the burden of proof upon the wrong party. It, in effect, amounts to saying to a party charged with a fraudulent conveyance, "You must prove yourself innocent before the party preferring the charge is required to prove anything."

Cf. *Field* v. *Otero*, 255 Pac. 785.

It should be kept in mind that in a transferee proceeding insolvency must be proved at two basic dates: (1) At the time of the transfer of the property; (2) at the time the creditor brings his action to subject the property in the hands of the transferee to the payment of his claim. The first is necessary in order to show that the conveyance was a fraud on the transferor's creditors. The second is necessary in order to show that the primary debtor is unable to respond to the creditor's demand and therefore a resort to a secondary liability is justified.

If insolvency is shown at the first period the presumption would be that it continued to the second period, in the absence of a showing to the contrary, for where a showing is once made that insolvency exists it is presumed to continue until the contrary is shown. But a showing of insolvency at the second period does not relate back to the first period and establish insolvency at the first period. That we think is the weakness of respondent's position as it relates to the evidence which we have before us in the instant case. The only way that we can make a finding that Aycock was insolvent at the time of

the conveyance in question, or was rendered insolvent thereby, is to relate back the evidence as to the period of March 1934 and thereafter. And this, for reasons which we have already stated, we do not think we may do.

In addition to the authorities cited above, we think the instant case is controlled by our decision in *Annie Troll*, 33 B. T. A. 598. In that case we said:

> Upon the foregoing facts, which we find, we are called upon to determine the liability of petitioner as transferee. The burden of proof is upon the respondent to show that petitioner is liable as a transferee. Title IX of the Revenue Act of 1924, as amended by section 602 of the Revenue Act of 1928. This burden includes the burden of showing that the transfer of the assets to the transferee rendered the transferor insolvent, or that the transferor was insolvent at the time of the transfer. *Charles B. Behr*, 30 B. T. A. 1291; petition to review dismissed, *Commissioner* v. *Behr*, 74 Fed. (2d) 1011; *Willard H. Ashton*, 28 B. T. A. 582; *Florence McCall*, 26 B. T. A. 292; *Eliza J. Wray*, 24 B. T. A. 94; *American Feature Film Co.*, 24 B. T. A. 18; *Samuel Keller*, 21 B. T. A. 84; affd., *Commissioner* v. *Keller*, 59 Fed. (2d) 499; *Joseph A. Steinle, Administrator*, 19 B. T. A. 325; and *Phil Gleichman*, 17 B. T. A. 147.
>
> *     *     *     *     *     *     *
>
> Richard Wunsch, deputy collector, testified that at the time he filed the notices of tax lien on July 2 and 3, 1930, he made efforts to locate some assets of Charles Troll, but that he was unsuccessful. It is to be noted that the testimony of this witness is not directed toward proving what assets or liabilities Charles Troll had at the date in question, the controlling date, March 1, 1930, but to dates more than four months later, and therefore, it is not sufficient to prove insolvency on March 1, 1930, the date of the transfers in question here. * * *

On the strength of the foregoing authorities we sustain petitioner's point 1 and hold that respondent has failed to make out a prima facie case of transferee liability against petitioner as the transferee of the assets of Thomas J. Aycock. This being so, it is unnecessary to rule on petitioner's point 2.

Reviewed by the Board.

> *Decision will be entered that petitioner is not liable as transferee of the assets of Thomas J. Aycock.*

---

STERNHAGEN, dissenting: I think the Commissioner has proved enough to establish prima facie that petitioner is liable in equity for the unpaid deficiencies of the transferor. While there is still the possibility that the transferor was, after conveying his residence to the corporation, the owner of assets sufficient to satisfy the deficiencies, this could have been shown by the petitioner, which was his privately created corporation; and I think it fair and not a violation of the rules of evidence to require the petitioner to go forward with evidence

to show it or suffer the reasonable inference that the transferor retained nothing with which his tax liability could be satisfied.

There is no need here to import all the technique of setting aside fraudulent conveyances. The question is one of equitable liability. The individual taxpayer, while his deficiency was being litigated in the Board, set up a new corporation to which he transferred his residence and took all its shares, one directly and five to his nominees, members of his family. The corporation was not an innocent stranger. It knew all that the taxpayer knew. So far as this record shows, its shares continued to be owned by the same persons. Without more, there is ground for equitable liability. Seven or eight months later, the taxpayer transferor was found to be insolvent. This, taken with all the earlier circumstances, should establish the liability sufficiently to require rebuttal. What such rebuttal might have been to be effective need not be suggested; but since the transferee has preferred to rest with none at all, the case against it should be held to be established.

MELLOTT agrees with this dissent.