30 N.J. Super. 159 (1954)
103 A.2d 625
WALTER R. HOBLITZELL, PLAINTIFF,
v.
W. FRANCK HOWARD, WILLIAM C. HOBLITZELL, H.O.B. MOTORS, INC., A CORPORATION OF NEW JERSEY, JOHN E. TOOLAN AND JOSEPH J. SEAMAN, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 10, 1954.
*161 Mr. George F. Hetfield for the plaintiff (Messrs. Hetfield & Hetfield, attorneys).
Mr. Meyer E. Ruback for the defendants W. Franck Howard, William C. Hoblitzell, John E. Toolan and Joseph J. Seaman (Messrs. Ruback, Albach & Weisman, attorneys).
Mr. Daniel G. Kasen for the defendant H.O.B. Motors, Inc. (Messrs. Kasen, Schnitzer & Kasen, attorneys).
*162 FREUND, J.S.C.
The plaintiff Walter R. Hoblitzell is the owner of one-third of the capital stock and is one of three directors of the defendant H.O.B. Motors, Inc., successor to and transferee of the business and property of a former partnership, trading as H.O.B. Motor Sales. The United States Treasury Department has been, and is currently, investigating the income tax returns of the partners.
This proceeding was brought to enjoin the corporation and its board of directors from using corporate funds: (a) for the payment of any income tax deficiency which may be imposed upon the partners as a result of the tax investigation; (b) for the payment of fees to John E. Toolan, attorney, and Joseph J. Seaman, accountant, for services in connection with the investigation; and (c) for the payment of a pension to Walter Z. Hoblitzell, the plaintiff's father, pursuant to resolutions adopted by the board of directors over the plaintiff's objection. The plaintiff charges that there is a conflict of interest between the corporation and the former partners, and seeks an injunction restraining the defendants Toolan and Seaman from representing the corporation, and the corporation from paying them for services arising out of the tax investigation. Upon the filing of the complaint the plaintiff applied for a preliminary restraint, which Judge Stein denied. Hoblitzell v. Howard, 25 N.J. Super. 397 (Ch. Div. 1953).
At the trial, in addition to the testimony of the parties, tax experts testified as to the liability of the corporate transferee for any unpaid taxes of the partners.
There are two main issues in the case: (1) the liability of the corporate transferee for alleged unpaid income taxes of the partners arising out of the partnership business, and (2) the validity of the resolutions for the pension. The propriety of payment by the corporation of attorney's and accountant's fees for services rendered in connection with any possible tax deficiency of the partners depends upon the determination of the first issue.
For a number of years prior to November 1, 1949 the plaintiff's father, Walter Z. Hoblitzell, his brother, William *163 C. Hoblitzell, and his brother-in-law. W. Franck Howard, were co-partners in an automobile sales business trading as H.O.B. Motor Sales. In the latter part of October, 1949, they organized a corporation, H.O.B. Motors, Inc. By bill of sale dated November 1, 1949 the partners sold and transferred all of the assets of the partnership to the corporation in consideration of 1,500 shares of its capital stock, 500 shares to each partner. In addition, 10 shares were issued to the plaintiff, Walter R. Hoblitzell.
On October 28, 1949 the plaintiff agreed to purchase 375 shares of his father's stock, with an option to purchase the other 125 shares. However, a formal written agreement dated October 9, 1951 voided the earlier agreement and provided that the father sell to the plaintiff his 500 shares of stock for $55,000, and also his interest in real estate being used as a garage. The father then completely severed his connection with the business, and he and his son entered into another agreement whereby the son agreed to pay his father $20,000 in 48 consecutive monthly instalments of $416.66 each, commencing November 1, 1961, and in consideration thereof the father agreed not to compete with the business of the corporation for a term of 14 years. On October 9, 1951 the plaintiff paid his father $110,000  evidently the real estate was valued at $55,000. To enable the plaintiff to make the purchase, the corporation loaned to him the sum of $100,000, of which there remains unpaid at the present time a balance of $85,000. The indebtedness of the plaintiff to the corporation is of no pertinency in this litigation, but is mentioned merely as a fact. The plaintiff had had ten shares of stock issued to him at the time of incorporation, and by the acquisition of his father's stock became the owner of a total of 510 shares. Thereupon the corporation issued to each of the other two stockholders ten shares, so that each of the three now owns 510 shares. They are the only stockholders and constitute the entire board of directors and the officers of the corporation.
Subsequently, the Bureau of Internal Revenue initiated and has been conducting an income tax investigation of the *164 partnership for the years 1947, 1948 and 1949. The defendants W. Franck Howard and William C. Hoblitzell have informed the plaintiff that they intend to pay any tax deficiencies which may be assessed against the partners out of corporate funds, on the ground that the corporation assumed the payment of this liability. At meetings of the board of directors the defendants Howard and Hoblitzell introduced and adopted, over plaintiff's objection, resolutions employing John E. Toolan as attorney and Joseph J. Seaman as accountant in connection with the tax investigation, and authorized payments to them for their services.
Walter Z. Hoblitzell had been seriously injured in an automobile accident and was incapacitated from performing services to the corporation. He had resigned as a director and withdrawn from active participation in the business on January 22, 1951, and had sold his stock to his son on October 9, 1951. At a meeting held on January 29, 1953 the board of directors, over the objection of the plaintiff, adopted a resolution providing for the payment of a pension of $100 a week to Walter Z. Hoblitzell, and an accrual of $5,200 was set up for payments during the year. At an earlier meeting a pension in the sum of $6,260 had been set up as an accrual on the books of the company, but actually no disbursement had ever been made. However, William C. Hoblitzell personally advanced to his brother over $2,000. The reason given for voting a pension to Walter Z. Hoblitzell was that he had been one of the founders of the business, had built it up, and had been an original stockholder of the successor corporation.
The parties formulated the issues in the pretrial order, summarized as follows:
1. Should the defendants be restrained from using corporate funds for the payment of any tax deficiency on account of the partnership business, and for legal and accounting fees for services pertaining to the investigation by the Bureau of Internal Revenue?
2. Should the defendants, Toolan and Seaman, be restrained from representing the defendant corporation as attorney and accountant respectively?
3. Is the pension to Walter Z. Hoblitzell valid?
*165 In order to resolve the question of the liability of the corporation for unpaid income taxes arising out of the partnership business, preliminary questions of fact must be determined. What were the terms of sale from the partnership to the corporation? Did the corporation assume the payment of any unpaid tax obligations of the partners? If not, is the corporation obliged by operation of law to discharge this debt of the partners? The individual defendants argue that the corporation is liable for any tax which may be assessed, on the ground that the transferee assumed all the liabilities of the partnership, but the plaintiff denies such assumption.
Until the plaintiff purchased his father's stock, the issue was practically insignificant. The former partners and the stockholders  and their interests  were identical, and any tax deficiency paid by the corporation would have affected the value of their personal holdings to the same extent as if paid by them individually. The introduction of a third person, however, altered this situation, and the preliminary questions of fact regarding the terms of sale must be ascertained.
There is no written contract of sale. The minutes of a meeting of the partners held on October 17, 1949, read as follows:
"The partners of H.O.B. Motor Sales Company agreed to dissolve the partnership of the company and form a new corporation in the name of H.O.B. Motors, Inc. The partners also agreed to transfer the assets and liabilities of the old partnership as of November 1, 1949 to the new corporation and issue stock in proportion to each partner's share of the assets."
The minutes of the corporation show that the partners presented, and the corporation accepted, their proposal to sell and convey to the corporation "all of their respective rights, title and interest in the firm and partnership heretofore conducted by them," in consideration of each partner receiving 500 shares of stock.
The bill of sale dated November 1, 1949 was executed by the three partners, and transferred to the corporation *166 "all of the assets, good will, etc. of H.O.B. Motor Sales having a net worth of $149,597.09." The affidavit on the bill of sale is signed only by Walter Z. Hoblitzell, is not sworn to, and recites that "said property and each and every part and article thereof is now free and clear of and from all debts, claims, demands and liens of whatever nature and description * * *" The acknowledgment by the three partners is dated October 9, 1951. The bill of sale fixes the net worth of the partnership at a precise figure, namely, $149,597.09, which corresponds exactly with that shown on the financial statement of the partnership as of October 31, 1949. The statement sets out total assets of $211,518.83, liabilities of $48,948.92, reserves of $12,972.82, leaving a net worth of $149,597.09. Under "Liabilities" there is a line provided for "Income Taxes Previous Years," but there is no entry for that item. Therefore, insofar as the bill of sale and the financial statement are concerned, the corporation did not assume all the partnership liabilities, but only those shown on the financial statement, which do not include any liability for income taxes, actual, accrued or contingent, nor any reserve therefor. Indeed, the inference to be drawn from the fact that no figure is set out opposite the item "Income Taxes Previous Years" is that no taxes were then unpaid, nor was any tax deficiency anticipated. If the corporation was to assume any income tax deficiency which might later be assessed, the instrument of sale should have so provided.
For tax purposes a partnership is merely an aggregation of individuals who have pooled skill, services or capital, or all three, in order to make individual incomes. Scherf v. Commissioner of Internal Revenue, 161 F.2d 495 (C.C.A. 5 1947), cert. denied 332 U.S. 810, 68 S.Ct. 111, 92 L.Ed. 387 (1947). The filing of an income tax return by a partnership is required merely for informational and accounting purposes; the partnership is only a tax-computing unit, and is not a taxpayer or a taxable entity. Internal Revenue Code, Title 26, U.S.C.A., sec. 187. Neither the Internal Revenue Code nor the Uniform Partnership Act, R.S. 42:1-24 et seq., *167 recognizes a partnership as a taxable entity. Randolph Products Co. v. Manning, 176 F.2d 190 (C.C.A. 3 1949); Commissioner of Internal Revenue v. Whitney, 169 F.2d 562 (C.C.A. 2 1948), cert. denied 335 U.S. 892, 69 S.Ct. 249, 93 L.Ed. 429 (1948). Individuals carrying on a business as a partnership are liable for income taxes only in their individual capacity. 26 U.S.C.A., sec. 181. Partners are taxed on their distributive shares of partnership income regardless of whether such income is actually distributed, and they continue to be individually liable even after the dissolution of the partnership. The transfer of the assets of a partnership to a corporation in no wise affects the individual liability of the partners. By agreement between the transferor and the transferee the latter may assume the payment of any tax liability, and hence, as between the parties inter sese, the obligation for its discharge would rest primarily upon the transferee and secondarily upon the transferor; but insofar as the Treasury Department is concerned, the liability of the individual partners persists. Green v. Stone, 54 N.J. Eq. 387 (E. & A. 1896). If, by the transfer of the assets, the transferors render themselves insolvent, the Commissioner of Internal Revenue has the right to proceed against the transferee and resort to the property transferred.
In the case sub judice there was no assumption of liability by the corporation for any income tax deficiency which might be found to be due from the individual partners. The partners were not rendered insolvent by the transfer; each of them is worth in excess of $50,000, and the corporate defendant has a net worth of over $200,000. According to the proofs, all parties are financially responsible.
The subject is discussed in an article entitled The Elements of Transferee Liability, by Harold Kamens and William A. Ancier, 76 N.J.L.J. 397 (Nov. 19, 1953), and well summarized as follows:
"It may be said generally that the following components must coexist in order to fasten transferee liability:
*168 1. The transferor must have been liable for payment of a tax. Sherrod, 16 B.T.A. 622; Kentucky Oil Corp., 21 B.T.A. 1150, appl. dism. C.C.A. 6th; Rollo, 20 B.T.A. 799.
2. The liability in question must have accrued prior to the transfer. Rogers, 12 B.T.A. 816.
3. All reasonably possible remedies against the taxpayer must have first been exhausted before proceeding against the transferee. Oswego Falls Corp. v. C.I.R., 26 B.T.A. 60, affirmed 2 cir., 71 F.2d 673.
4. The transferee must have received from the transferor, whether such transferor is the original taxpayer in question or a transferee himself, assets having value. Whitney, 26 B.T.A. 212.
5. Such transfer of assets must have left the transferor insolvent. Terrace Corp., 37 B.T.A. 263; Baker v. C.I.R., 30 B.T.A. 188, affirmed 3 cir., 81 F.2d 741.
6. The proceedings against the transferee must have been commenced within the statutory period of limitations."
Here, the partner transferors, and not the corporate transferee, are liable for any tax deficiency. Accordingly, there is a conflict of interest between the former partners and the corporation. The conflict arose when the plaintiff disputed the contention of the former partners that the corporation had assumed the payment of all liabilities. Thereafter, the interests of the former partners and the corporation were sharply and diametrically opposed. It would be to the self-interest of the partners, and to the disadvantage of the corporation, to shift the tax liability. The evidence establishes that there was no assumption of tax liability by the corporation, and hence the former partners are liable for the payment of any attorney's or accountant's fees in connection with their own tax liability. If, as a result of services rendered by the attorney and the accountant, the claim of the Bureau of Internal Revenue for tax deficiency against the partners fails or is minimized, the benefits accrue entirely to the partners, and not to the corporation, and corporate funds may not be used for the payment of such fees.
Under attack are three resolutions pertaining to pensions payable to the plaintiff's father, Walter Z. Hoblitzell. By the first the sum of $6,260 was accrued on the books of the company for the payment of hospital and medical expenses. But no payments were made from this fund, although William C. Hoblitzell personally advanced to his brother over *169 $2,000. The resolution was adopted in October 1951, with the consent of all the directors and stockholders, including the plaintiff. He now objects to any disbursement on the ground that the fund was set up as an emergency fund; that his father was not in financial need and that disbursements were to have been made for hospital and medical expenses, and not directly to the beneficiary.
The other two resolutions relate to the payment of a pension of $100 per week to Walter Z. Hoblitzell. They were adopted in January 1953, more than a year after he had severed all connection with the corporation, and were passed over the plaintiff's objection. The first resolution, therefore, is in a different category than the others, and by his approval the plaintiff is estopped from challenging its validity. Certainly, the directors with the consent of all the stockholders could make provision for payment of hospital and medical expenses. The plaintiff's objection to the reimbursement of William C. Hoblitzell because he paid the moneys directly to the plaintiff's father rather than to the hospital and the doctors is without merit if the funds were used for such purposes, and the plaintiff has not shown that they were not so used. Accordingly, William C. Hoblitzell is entitled to reimbursement for his advances.
It is fair to say that the pension resolutions were not adopted because of services performed by Walter Z. Hoblitzell for the corporation, but rather for services rendered by him in founding and building up the partnership business, which the corporation acquired.
The plaintiff opposes any pension payments by the corporation to his father on the grounds that no pension plan was approved by the stockholders in accordance with R.S. 14:9-2, and that Walter Z. Hoblitzell was not an employee of the corporation on January 29, 1953 when the pension was voted, he having resigned from active participation in the business on January 22, 1951. The statute, R.S. 14:9-1(c), expressly provides for pensions to "employees," and there appears no authority for construing the word "employees" to include "former employees."
*170 Actually, the present litigation involves liability for the payment of the father's share of any deficiency in the partners' income taxes, and attendant expenses. The individual defendants say that the corporation should pay, and the plaintiff says "No." As to the pension, again the individual defendants say that the corporation should pay; again, the plaintiff says "No." It is obvious that this is unfortunately a family dispute between the plaintiff on the one side and his uncles on the other. The factors which caused the dissension and friction within the family are not before the court. The issues raised here have to do with the legal validity of certain corporate acts, and the plaintiff's challenge is well taken, with the exception of the reimbursement to William C. Hoblitzell for his advances.
Judgment accordingly.