Jose Bensuade, Transferee v. Commissioner.
Bensuade v. Commissioner
Docket No. 4532-62.
United States Tax Court
T.C. Memo 1964-132; 1964 Tax Ct. Memo LEXIS 204; 23 T.C.M. (CCH) 805; T.C.M. (RIA) 64132; May 11, 1964
*204 Transferee liability: Exhaustion of remedies against primary obligor: Burden of proof. - The Commissioner carried his burden of proving that he had exhausted his remedies against the primary obligor, that there were transfers of assets by the primary obligor to the petitioner without consideration during or after the time the primary obligor's tax liabilities accrued and that at the time of the transfers the primary obligor was insolvent or that the transfers rendered it insolvent. Therefore, the taxpayer was liable as transferee. William F. Chapman for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent has asserted that petitioner is liable as a transferee of Flomarcy Company, Inc. *205 , in the amount of $87,878.22. This determination is based upon deficiencies and an addition to tax determined against Flomarcy Company, Inc., in the years and in the amounts as follows: Addition to
Tax under
sec. 293(b)
Year Ending
Deficiency
IRC 1939
11-30-47
$55,000.00
$27,500
11-30-53
2,330.48
11-30-54
3,047.74
The only issue presented is whether petitioner is liable as a transferee for the above deficiencies. Findings of Fact Petitioner is a citizen of Portugal and a resident of Lisbon, Portugal. During the years in issue petitioner was president and controlling shareholder of Flomarcy Company, Inc. (hereinafter sometimes referred to as Flomarcy), a New York corporation with offices at 90 Broad Street, New York, New York. In the fiscal years ending November 30, 1947, 1953 and 1954, petitioner received salary payments of $24,000, $30,000 and $25,000. Flomarcy was incorporated in 1939. It filed its corporate income tax returns for the fiscal years ending November 30, 1947, 1953 and 1954 with the collector of internal revenue, second district of New York, and his successor, the district director, lower Manhattan. Its principal business *206 was that of steamship agent for various shipping lines. Flomarcy was an agent for Carregadores Acoreanos (hereinafter referred to as C.A.) a Portuguese shipping line until the end of 1954, when Flomarcy went out of business. East Coast Overseas Corporation (hereinafter referred to as ECOC) succeeded. Flomarcy as the agent for C.A. on January 1, 1955. John Jayne, the president of ECOC was an employee of Flomarcy from 1940 to the end of 1954. In connection with this trial he was served with a subpoena duce tecum by respondent covering the books and records of Flomarcy for the fiscal years here in question. He was unable to produce most of these books and records because he had delivered them to petitioner at the latter's request. He did produce the voyage ledger of the ship "City of Lisbon" for the years 1946-1948. The "City of Lisbon" was owned by the Iberian Star Line of Panama, Inc., a corporation wholly owned by petitioner. In 1959 a hearing was held by the Waterfront Commission of New York Harbor. The books and records of Flomarcy were available to the Commission during this hearing, and from the general ledgers and cash disbursement books Samuel P. Lisman (hereinafter sometimes *207 referred to as Lisman), the chief accountant of the Commission, prepared a summary of balances of certain accounts of Flomarcy. These accounts showed Flomarcy's financial position at the end of its 1947-56 fiscal years. In preparing this summary Lisman had discussions with Flomarcy's inside accountant, Walter Tritell, who worked on the Flomarcy books from which Lisman had made the summary of Flomarcy accounts. The summary of accounts indicates that the net worth of Flomarcy on November 30, 1947, 1953 and 1954 was $33,599.07, $27,482.56 and $26,639.20, respectively. Flomarcy's corporation income tax returns for those dates indicate surplus and undivided profits of $36,893.94, $26,422.56 and $25,579.20. For the fiscal years ending November 30, 1947, 1953 and 1954 Flomarcy owed Federal income taxes as follows: [1]
1947
1953
1954
FY 1947 taxes
$11,064.43
FY 1947 taxes
1,958.10
FY 1947 taxes
55,000.00
$55,000.00
$55,000.00
FY 1953 taxes
2,330.48
2,330.48
FY 1954 taxes
3,047.74
$68,022.53
$57,330.48
$60,378.22
*208 On November 30, 1947, 1953 and 1954 Flomarcy was insolvent. On the summary of Lomarcy accounts prepared by Lisman there is an item for "Loans Receivable" from Bensuade. This item represents amounts withdrawn by petitioner in addition to his salary. These were primarily for personal, non-corporate expenses, such as mortgage and life insurance payments. The balance in this account was $257,763.30 on November 30, 1947, and increased each fiscal year except 1950 until 1954, when the balance due from Bensuade was $336,995.44. Another item on the summary was an account of amounts due to petitioner's wholly-owned corporation, Iberian Star Line of Panama, Inc. This account was also used to reflect drawings by petitioner for his personal expenses. Between December 1, 1947, and May 1948 petitioner drew $27,777.03 from this account for payment of items such as hotel and furrier bills. These amounts did not represent corporate expense and were transferred to petitioner by Flomarcy without consideration. Petitioner is liable as a transferee of Flomarcy. Opinion The issue to be decided is whether petitioner is liable under section 311(a) and (f) of the Internal Revenue Code of 1939[2] *209 as a transferee from Flomarcy. Petitioner entered no appearance at the trial of this case. Prior to trial he had terminated the authority of the attorney who had filed the petition herein under a power of attorney executed by petitioner in Lisbon, Portugal, where he is a citizen and resident. *210 The underlying deficiency in this case is predicated upon a decision of this Court in docket 4533-62, Flomarcy Company, Inc., entered February 19, 1964, for failure of that petitioner to prosecute its case. In that case deficiencies totalling $60,378.22 were determined by respondent with respect to the failure of Flomarcy to report capital gain realized on the sale of a ship, and for traveling and entertainment expenses which respondent determined were overstated. Respondent had also determined a $27,500 addition to tax for fraud, but this item was conceded at trial. The amount of petitioner's possible transferee liability in this case must likewise be reduced to $60,378.22 since such liability is derived from the tax amount owed by Flomarcy, the transferor. Respondent has the burden of proving petitioner's liability as a transferee. Section 1119(a). [3] In order to carry his burden of proof, respondent must show that he has exhausted his remedies against Flomarcy, the primary obligor, and has commenced this proceeding within the statutory period of limitations; that there were transfers of assets by Flomarcy to petitioner, without consideration, during or after the period for which *211 Flomarcy's tax liabilities accrued; and that at the time of the transfers Flomarcy was insolvent or that the transfers rendered it insolvent. Respondent contends that he has met his burden of proof; we agree. Petitioner in his petition does not raise the affirmative defense of the statute of limitations, so that we need not consider that issue. R. G. Robinson, 12 T.C. 246 (1949), affd. 181 F. 2d 17 (C.A. 5, 1950). Flomarcy, the primary obligor, went out of business in 1954. The record is not clear as to whether it has been dissolved under the laws of New York, its state of incorporation, or whether it is still in existence. The bulk of Flomarcy's books and records were delivered to petitioner and presumably have either been destroyed by petitioner or are in his possession in Lisbon, Portugal. The summary of balances prepared by the Waterfront *212 Commission reflect only minor changes in Flomarcy's financial position from 1954 to 1956. Ordinarily respondent must exhaust his remedies against the primary obligor, since the transferee's liability is derivative. Healey v. Commissioner, 345 U.S. 278 (1953); Arlington F. Brown, 24 T.C. 256 (1955). Respondent is not required, however, to do a futile act. Coffee Pot Holding Corp. v. Commissioner, 113 F. 2d 415 (C.A. 5, 1940), affirming a Memorandum Opinion of this Court; Hatch v. Morosco Holding Co., 50 F. 2d 138 (C.A. 2, 1931). Respondent is not required to pursue his remedies in a foreign country before asserting transferee liability, George M. Newcomb, 23 T.C. 954 (1955), and it would be unnecessary for respondent to proceed against Flomarcy if it has been dissolved, McGowin-Fishee Lumber Co., 20 B.T.A. 223 (1930), or if it was insolvent or has no existing assets, W. W. Cleveland, 28 B.T.A. 578 (1933), affd. 77 F. 2d 184 (C.A. 5, 1935); B. F. Fairless, 19 B.T.A. 304 (1930), affd. 67 F. 2d 475 (C.A. 6, 1933). As will be discussed infra, Flomarcy was *213 insolvent during the taxable years before us, and in the absence of evidence to the contrary, we presume that this insolvency continued until the date that the statutory notice of deficiency in this case was mailed to petitioner. Arlington F. Brown, supra; Bennett E. Meyers, 21 T.C. 331 (1953); Terrace Corporation, 37 B.T.A. 263 (1938). Because of Flomarcy's insolvency, respondent, would not be required to proceed against it for the amount of taxes due. Through the testimony of Walter Tritell, Flomarcy's inside accountant, respondent has established that Flomarcy made transfers to or on behalf of petitioner for his personal expenses. Petitioner withdrew amounts, in addition to his salary, to make mortgage and life insurance payments, to pay furrier and hotel bills, and for numerous other personal expenses. The transfers made by Flomarcy to petitioner from the end of its 1947 fiscal year through its 1954 fiscal year, as evidenced by the outstanding balances in its "Loans Receivable" account and by the ledger entries in the Iberian Star Line of Panama, Inc., account during the 1948 fiscal year are well in excess of the $60,378.22 transferee liability *214 determined by respondent. Since petitioner received a salary of $24,000, $30,000 and $25,000 in the years in question, we presume that the above transfers were not made as additional compensation to petitioner for his work as president of Flomarcy. There is no evidence in the record to establish that any consideration whatsoever passed to Flomarcy. In order to show the insolvency of Flomarcy, respondent has introduced both the summary of balances made during the Waterfront Commission investigation, and the balance sheets in schedule L of Flomarcy's corporate income tax returns for its 1947, 1953 and 1954 fiscal years. While the figures from these two sources are not identical, they indicate that Flomarcy had earned surplus or net worth between $25,579.20 and $36,893.94 during these three fiscal years. During these fiscal years, Flomarcy had Federal income tax liabilities of $68,022.53, $57,330.48 and $60,378.22. For purposes of transferee liability, insolvency means an excess of liabilities over assets. Mary R. Kieferdorf, 1 T.C. 772 (1943), affd. 142 F. 2d 723 (C.A. 9, 1944). In determining whether Flomarcy was insolvent, its liabilities for Federal income *215 taxes and additions thereto, must be taken into account, even though the amounts were unknown at the time of the transfer. Scott v. Commissioner, 117 F. 2d 36 (C.A. 8, 1941), affirming a Memorandum Opinion of this Court; Bennett E. Meyers, supra; Samuel Keller, 21 B.T.A. 84 (1930), affd. 59 F. 2d 499 (C.A. 7, 1932). When the income tax deficiencies are added to Flomarcy's financial statements, either on its corporate income tax returns or on the summary of balances prepared for the Waterfront Commission, Flomarcy's liabilities exceed its assets at the end of its 1947, 1953 and 1954 fiscal years. Thus, Flomarcy was insolvent at those times, and we have found that respondent has sustained his burden of proving that petitioner is liable as a transferee of its assets without consideration. Decision will be entered under Rule 50. Footnotes
1. The amounts of $11,064.43 and $1,958.10 represent additional taxes and interest thereon assessed on April 6, 1951, for Flomarcy's 1947 fiscal year. The other amounts were determined in docket 4533-62, Flomarcy Company, Inc., decision entered on February 19, 1964.↩
2. SEC. 311. TRANSFERRED ASSETS. (a) Method of Collection. - The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds): (1) Transferees. - The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter. * * *
(f) Definition of "Transferee." - As used in this section, the term "transferee" includes heir, legatee, devisee, and distributee. All statutory references are to the 1939 Code unless otherwise specified.↩
3. SEC. 1119. PROVISIONS OF SPECIAL APPLICATION TO TRANSFEREES. (a) Burden of Proof. - In proceedings before the Tax Court the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.↩